## DUKE v. CAHAWBA NAVIGATION CO.

1. The ordinance appended to the constitution of Alabama is the declaration of the people of the State, that the general powers of the State shall not be exercised in particular cases, and is revocable either entirely or *pro tanto*, by an agreement between the State government and the United States.

2. The consent to abrogate the ordinance, so as to revive the power of the State to invest a corporation with power to collect tolls on a navigable inland water course, is sufficiently expressed by an act of the State legislature authorizing the particular toll when the assent of Congress is obtained, and by an act of Congress assenting to that of the State. And when such assent is given, none is afterwards requisite to acts of the legislature reviving the corporation or amending its charter, if no extension of the right to take tolls grows out of the revival or amendment.

3. A clause in an act of incorporation providing that its stock shall only be transferred on its books, is for the security of the corporation, and does not prevent the title from passing as between vendor and vendee; therefore one is a competent witness who has sold his stock and transferred it, although not in the manner prescribed by the act.

4. The organization of a corporation is a matter which is properly proved by the books of the corporation, and that too, when the suit is against a stranger.

5. When a corporation is organized by those to whom the power of organization is confided, it is unnecessary under the issue of *nul tiel corporation* to show, that the necessary amount of stock has been subscribed, or paid for, as directed by the charter.

6. When the charter of a corporation invested it with power to take tolls' and provided also for the appointment of a commissioner to certify to the Governor when the river on which the tolls were collectable is out of order no other evidence than his certificate is admissible to show the river is out of repair.

7. A clause in the charter, authorizing the collection of tolls, as soon as the Governor, after receiving the certificate of certain commissioners, shall proclaim the right, the proclamation and certificate, by itself, is not evidence of the organization of the company.

8. When a corporation book is proved, and portions of it read to the jury, it is error to charge that portions not read are also evidence. When books, or voluminous documents, are proved before the jury, the opposite party has the right to insist on the necessary information to enable him to inspect what goes as evidence.

Writ of Error to the Circuit Court of Perry.

Assumpsit by the company against Duke, to recover certain tolls. The declaration contains two counts, one special, setting out the manner of incorporation, the right to tolls under the act, &c. &c.—the other general, merely referring to the acts, without setting out how the tolls became due. The defendant demurred separately to each count, and when his demurrer was overruled, pleaded—1. *Nul tiel corporation.* 2. *Non assumpsit.*

At the trial, the plaintiffs produced and read to the jury—1. An act of the State legislature of the year 1827, entitled an act to incorporate the Cahawba Navigation Co. 2. An act of Congress, passed 28th May, 1828, giving assent to the said act of the legislature. 3. An act of the legislature of this State, approved 29th January, 1829, reviving the act of 1827. And, 4. An act approved 9th January, 1835, amending the charter. On this documentary evidence certain in-

structions were asked, which will be noticed after stating the other evidence.

In the further progress of the trial, a witness was offered by the plaintiffs, to prove the fact that the company was organized under the charter. This witness was objected to by the defendant, on the ground that he was a stockholder, but he stated he had transferred his stock in writing, but not on the books of the company. A by-law of the company required the transfer to be made on the back of the certificate of stock, in the presence of a justice of the peace in Bibb county, or the clerk of the county court of that county, and in addition an order accepting the transfer to be inserted on the books of the company. On the book there appeared an order accepting the transfer of the stock of this witness, but there was no evidence that it had been done in the manner prescribed by the by-law. The court admitted the witness.

Another witness was offered, who admitted he owned one share of stock by subscription, but had sold it. No transfer or notice of transfer, appeared on the books of the company, and there was no evidence it was made as required by the by-law. The court also admitted this witness.

The plaintiff produced a book, which was proved by witnesses to be the book of the company in 1827, 1835, 1841-2-3-4. The defendant object to this book as evidence against him, but the court allowed it to be read, to prove the organization of the company. The plaintiff read divers extracts from the book, but not all.

The plaintiff produced certificates from the Governor, in these words, to wit: Executive department, Tuscaloosa, March 5, 1844. To the President and Directors of the Cahawba Navigation Co. In conformity with the provisions of an act of the general assembly of the State of Alabama, entitled, &c. J. C. Harrell, Thomas L. Owen, and Elias George, were appointed to inspect and examine the improvements made in the Cahawba river, by the Cahawba Navigation Co. and the said commissioners having, on the 27th day of February, 1844, reported to this department, that they had inspected and examined said improvements from Maberry's landing to Old Town, thence to Centreville, or falls of the

Cahawba river, and that they deem the same completed, so as to admit the easy ascent and descent of boats of twenty tons burthen, as contemplated in the 11th and 12th sections of the said act. Therefore, I, Benjamin Fitzpatrick, Governor, &c. do hereby declare and make known to you, as well as all other persons, that you are authorized to charge and collect such freight, or toll, as is fixed and allowed by law in said act of incorporation. In testimony, &c.

Also, a similar certificate, dated 27th February, 1844, stating the report of the commissioners of the examination of the river from the town of Cahawba to Maberry's landing, and a similar declaration of the right of the company to collect tolls under the act.

After proving also that the defendant had freighted cotton down the river, the plaintiffs closed their case. Whereupon the defendant proposed to prove, that the Cahawba river, at the time the cotton was taken down by the defendant, and after the date of the last certificate by the Governor, was in a bad condition, and not in such repair as the charter prescribes.

The court excluded this evidence. The plaintiff offered no evidence to show the defendant had notice of the existence of the charter, or subsequent acts under it, or of the meetings or proceedings of the company.

On this state of proof, the defendant asked the court to charge—

1. That by the ordinance of the convention of the people of this State, all navigable streams were to remain free to the citizens of this State, without toll, tax or duty, for navigating the same, and that the Cahawba river being a navigable stream no toll can be collected from any citizen for navigating the same, unless the ordinance has been revoked with the consent of Congress, and that the act incorporating the company and the act of congress assenting thereto, do not amount to a revocation of said ordinance. This was refused, and the charge given, that the consent of congress, expressed in the act referred to, was a revocation of said ordinance.

2. That unless the plaintiffs had shown the assent of congress to the acts reviving and amending the charter, these were of no effect or validity, and the plaintiffs were not enti-

tled to recover. This was refused, and the charge given, that these acts were not such material alterations of the charter as to require the assent of congress, and that each was valid without such assent.

3. That the Cahawba river being a public highway previons to the act of incorporation, and the subsequent acts under it, the defendant was not liable, unless he had notice of the grant of the franchise, and of their right to demand toll. This the court also refused, and charged, that notice to the defendant was unnecessary.

4. That unless the proof showed a demand by the plaintiffs of the toll before suit brought, they were not entitled to recover. This was refused.

5. That unless the plaintiff had proved the amount of stock required by the charter, was subscribed before the organization of the company, by the election of President and Directors, then the company was not properly organized and could not recover.

6. That unless the amount of stock required by the charter to be paid in cash, at the time of subscribing, was actually paid in cash at that time, then the plaintiffs could not recover. These two last were severally refused, and the jury charged, that the certificate of the Governor was conclusive evidence of the regular organization of the company, and of its right to collect toll, and the jury could not look behind the certificate.

7. With reference to the book of the company, proved before the jury, the court charged, that all the book was evidence before them, as well the parts not read, as those which were.

The defendant excepted to the several rulings of the court, and the assignments of error open all the questions raised in the court below.

A. Graham, (of Perry,) for the plaintiffs in error, made the following points:

1. The ordinance seems to be decisive that no tolls shall be imposed until it is revoked by the people of Alabama, with the consent of the United States. [Dig. XIII.] But even if it can be revoked *pro tanto,* yet the assent must be given

Duke v. Cahawba Navigation Co.

to the same extent, and in the same manner as granted. This has never been done, as there is no assent to any other than the first act. [9 Porter, 577.]

2. The witnesses objected to, but admitted, were stockholders, as the stock never was transferred in the manner provided by the by-laws.

3. Although the books of the corporation may be evidence between the corporators, they are not so against a stranger; nor is any thing evidence not read to the jury, unless waived by consent. [2 Porter, 230; 1 Starkie Ev. 298.]

4. If the Governor has omitted to appoint the commissioner contemplated in the 13th section of the charter, it is against common right to refuse permission to show the river was not in the condition required to give the right of toll.

5. The defendant is a stranger to the corporation, and no suit will lie without a special demand of the dues. [4 Ala. Rep. 70.

6. The corporation could not be legally constituted until the stock was actually subscribed and paid for, by the terms of the charter. [7 Ala. Rep. 670.] And the Governor's certificate was no evidence of the organization of the company.

E. W. PECK, contra, submitted—

1. The ordinance is no part of the constitution, but is a mere agreement between the State and the United States. The assent was important to give the right to charge toll, and unimportant to the revival of the charter, or its amendment.

2. The witnesses were not stockholders in fact, and the by-laws being for the protection of the company, may be waived. [Ang. & Ames on Cor. 294.] Besides these witnesses were introduced to prove the books, and these were sufficiently established by other witnesses. No injury therefore resulted from this error, if it is one.

3. The books of the company were proper evidence to show the organization of the company. [Angel & Ames, 407; 4 Rand. 580. As for the permission for the whole book to go to the jury for this purpose, without being read, it is an error, if at all, of no importance, as no injury is shown.

4. The certificate of the Governor was conclusive of the right to take toll, and this could not be without the organization. [Tar River Co. v. Nell, 3 Hawkes, 520 ; 5 Ala. 806.] So too the absence of the certificate, that the river was out of condition, is conclusive.

5. The objection that special notice was never given of the right to demand toll, cannot be sustained. The acts of the State are public laws, of which all are presumed to have information ; but notice is impossible, as the company could not know who would use the river. The use of the river gives the right, and the toll becomes a debt as soon as due.

6. The clauses in the charter requiring the subscriptions to be paid, is for the benefit of the company, and if omitted, the corporation is not defunct. The user of the franchise, and its recognition by the department of the government authorized to act on its representations, or subsequent action, prevents any inquiry into these matters in a collateral way. The certificates were offered, not as evidence of the organization, but to show the right to toll, and in this connection is the charge to be considered.

GOLDTHWAITE, J.—1. We think the argument that the ordinance appended to our constitution is a part of that instrument, and can only be abrogated and annulled in the same manner as any other part, cannot be sustained. By the constitution, the powers of the State government are restricted in the particular matters covered by it, and the ordinance is the declaration by the people, that certain general powers, otherwise appertaining to the State as a sovereignty, shall not be exercised in particular cases. It provides also, that the disclaimer shall be irrevocable without the consent of the United States. The State government being invested with the entire authority of the people, except where they have chosen to restrict the government, it follows that all the external relations of the people with the citizens of other States or with the government of the United States, must be conducted by the State government. The ordinance itself indicates that it is revocable with the consent of the United States, and as the consent of the people of this State can only be expressed through the State government, it fol-

lows, that when the assent of both is given by the constitu-
ted authorities of each, the powers disclaimed may be resum-
ed and immediately exercised by the State authorities, under
the general powers, these not being restricted otherwise than
by the ordinance.    As the ordinance is thus revocable by the
consent of the United States, it does not seem to admit of
material doubt, that a consent to a partial abrogation is effec-
tual as a revocation *pro tanto*.

2. The next question is, whether the consent of the State
and of the United States, has been given to the company to
collect the toll demanded.    The 16th section of the charter
provides, that nothing in the act shall be so construed as to
prevent or obstruct the free navigation of the river, so far as
it is now. a navigable stream, until the assent of Congress shall
be obtained.    This seems to be given by the act of the 24th
May, 1828, which gives the consent of Congress to the act
of this State, incorporating the company. [8 Laws U. S. 121.]
These acts are certainly entitled to be considered as passed
by each body, with reference to the powers delegated to
them, and it is but just to our legislature to presume they
were guided by the ordinance, and did not intend to invest
the company with the right to charge tolls, unless the con-
sent of the United States should be given; if that consent
was necessary to the validity of the act.    Nor can we intend
the assent of Congress was to any thing beyond the imposi-
tion of toll.    Any other intendment would charge that body
with legislation beyond their appropriate functions.    We
think no other conclusion is to be drawn from these acts, than
that both Congress and the State have assented to the revo-
cation of the ordinance, so far as is necessary to invest the
company with the right to collect toll, in conformity with
the charter.    We are not prepared to say, that the provisions
of this charter, so far as the extent of duration, or the amount
of toll, could be extended without further consent; but no
attempt, in either particular, is made in the subsequent acts
reviving and amending the charter.    We concur then, with
the opinion of the circuit Judge, that no assent of Congress
was necessary to the subsequent acts of legislation.

3. The 15th section of the charter provides, that stock

12

shall be transferrable only on the books of the company, and it is insisted, this is obligatory, however the by-laws may be. The better opinion, however, sustained by numerous decisions, seems to be, that clauses of this nature are inserted for the benefit of the corporation only ; and that as between vendor and vendee, the stock-passes by any other mode of transfer. [Angel & Ames on Corp. 295, and cases there cited.] We do not understand from the exceptions taken, that transfers of the stock held by the witnesses were not actually made, but merely that they were not made in the manner required by the charter and by-laws. However the case might be if a specific liability was imposed by the charter on the stockholders, and the mode of transfer pointed out, we think, in the absence of any such liability, the form of the transfer is immaterial, between the buyer and seller, and that a transfer *bona fide* made, divests the interest, and renders the individual competent as a witness.

4. The organization of the company was certainly a matter which the books of the company were competent evidence to establish. By the organization of a company, we understand the meeting of individuals claiming to be corporators, and their action in choosing officers and servants. If the books themselves were not evidence of these facts, it would be difficult, after a lapse of time, to establish them in any other mode. It has been held, when the charter required two thirds to form a quorum, that the books were evidence that this portion of the corporators did assemble. [Com. v. Wailper, 3 S. & R. 29.] The same principle is asserted in Gray v. Lynchburg & S. Com. 4 Rand. 578, and we can see no distinction between proving acts of the corporators after the corporation is formed, and the acts of corporators in forming the corporation. [See Angel & Ames on Cor. 506.]

5. Immediately connected with this subject is the charge asked, that it was incumbent on the corporation to show the amount of stock subscribed, and that the cash was paid at the time. Whatever favor objections of this kind are entitled to when the issue is on a *quo warranto*, they are entitled to no weight coming from a stranger to the corporation, when it is shown to be organized from the acts of those who are invested with the power of organization. It has been

held, that the certificate of commissioners, made a condition precedent to incorporation, cannot be contradicted for the purpose of defeating a suit by the corporation. [Tar River Nav. Co. v. Neil, 3 Hawkes, 520.] When a corporation has gone into operation, and rights have been acquired, every presumption, it is said, shall be made in favor of its legal existence. [Hagerstown Co. v. Cruger, 5 H. & J. 122.] The charter provides for the incorporation of the company, and directs that it may go into operation when certain acts are done. The existence of the corporation is derived from the act, and it admits of question, when the State permits a user of the franchise, if it is open to question at the suit of an individual. [Fire Department v. Kip, 10 Wend. 269; An. & Ames, 506.] We are clear, therefore, in the opinion, that the corporation on this issue, were required to show nothing beyond an organization under the charter.

6. After providing for the mode by which the company shall procure the certificate of the Governor, that the improvement of the river is completed, so as to authorize the collection of toll, it is provided by the 13th section, that the Governor shall appoint some suitable person, whose duty it shall be, whenever said river shall be considered by him not to be in such repair as to admit of the easy and safe descent of boats, to report the same to the Governor, and the said company shall not receive any toll until the said river shall be reported in sufficient repair, &c. We think the intention of this section is to put the river under the supervision of the commissioner named, and that his certificate is the only matter to defeat the claim for toll, after the river is once in order.

7. It is somewhat difficult to conceive, how the commissioners could well be appointed by the Governor, under the 10th, 11th and 12th sections of the charter, unless the company was organized, yet it is quite clear the certificate given from the executive was not conclusive evidence that the corporation was organized. We have already shown how this could be proved, and the inference from the record is, that it was sufficiently proved; but, notwithstanding this was a point on which the defendant was justified in going to the jury, and was entitled to have the law applicable to it cor-

rectly given to them. In this particular we think the court erred.

8. And also in permitting evidence to go to the jury not read in their hearing, or read by the opposite party. We are not to be understood as deciding it is necessary to absolutely read to the jury all of a written document, but if the opposite party insists, such portions of the books and papers as are relied on must be read, or the necessary information given, to enable the adverse party to see what goes as evidence.

For these errors the judgment is reversed, and the cause remanded.