JOHN S. CASTLE *vs.* PETER LAWLOR.

The trial of the issue of fact as to the truth of a return to an alternative writ of mandamus is not required by the constitution to be by jury. The practice at the time of the adoption of our present constitution was, and has ever since been, for the court to try such issues.

A city charter provided that there should be but one collector of the city, town and certain school district taxes, and that he should be annually chosen at the town meeting, and should receive "for collecting all said taxes" in lieu of all other compensation a sum not exceeding $2,000. Held—1. That the collector was to receive that sum for his services for one year, and not for the collection of all the taxes that became payable during the year. 2. That he was therefore a salaried officer.

A statute provided that all town and city collectors whose compensation was fixed by a salary and not by a rate of commissions, should during their term of office have power to collect all taxes due the towns or cities of which they were collectors, and that at the expiration of their terms they should deliver their rate-bills, for the collection of all unpaid taxes, to their successors. Held that a collector whose term of office had expired was bound to deliver over his rate-bill to his successor, although the latter had not given bond, as it was no part of his duty to see that such bond was given.

This statute was passed in January, 1879, after the expiration of a city collector's term of office, which occurred on the first Monday of that month. Held that the statute applied to the case, and terminated whatever rights, as to collecting the taxes of his term after its expiration, the collector might have had under the city charter.

Two APPLICATIONS for a writ of mandamus to compel the defendant, a former tax-collector of the city and town of

Waterbury, to deliver up to the plaintiff the rate bills in his hands for the town and city taxes remaining uncollected at the expiration of his term of office, the plaintiff being the defendant's successor in both offices; brought, one to the Superior Court, and the other to the City Court of the city of Waterbury. The defendant made a return in each case, which was traversed by the plaintiff, and the court in each case found the facts and issued a peremptory mandamus. The defendant filed motions in error and brought both cases before this court. The points of law decided will be sufficiently understood without a fuller statement of the facts.

*J. O'Neill,* for the plaintiff in error.

*S. W. Kellogg* and *G. E. Terry,* for the defendant in error.

CARPENTER, J. The plaintiff in each of these two cases applied for a writ of mandamus. Issues of fact having been raised by the pleadings the defendant claimed a right to a trial by jury, which was denied by the court. This is assigned as error.

The history of the writ of mandamus is briefly this. It was originally a prerogative writ and issued only from the court of King's Bench, and originated at a time when it is supposed that the king presided in that court in person. It is of common law origin, and was devised to prevent a failure of justice. Hence it never issued when there was other adequate remedy. It first issued in the alternative, commanding the defendant to do the thing required or show cause to the contrary. If the latter, he stated in his return the facts and reasons for not obeying the writ. If the return was insufficient on its face a peremptory writ issued, if sufficient it was denied, the court having no power to determine the truth of the return. If the return was untrue the plaintiff's only remedy was an action on the case for a false return, in which he could recover damages only. Under this system the remedy was defective, inasmuch as a false return would deprive the plaintiff of the specific remedy to which he might be entitled and compel him to accept in lieu thereof pecuniary

Castle *v.* Lawlor.

compensation. The writ however was not much used until the latter part.of the seventeenth century, when its frequency called attention to this defect. To remedy it the statute of the 9th of Anne was passed, authorizing the plaintiff to plead to or traverse the return, and if the verdict was against the defendant the court was empowered to assess damages and issue the writ. The issues thus found under the statute were ordinarily tried by the jury. That statute with some slight modifications remains in force in England to the present time.

In this state the first knowledge we have of the writ is *Strong's Case* in the Superior Court for Litchfield County in 1787, Kirby, 345. It was there held that the writ would issue at the instance of the party interested to compel the town clerk to record a deed. The next case we have, and the only one prior to 1821, is the case of *Meacham* v. *Austin*, 5 Day, 233, in 1811. It was there held that the writ was a common law remedy in this state.

In the year 1821 the Superior Court for the first time was authorized by statute to issue writs of mandamus. The statute also provided that if the defendant made a return sufficient on its face, and it was denied by the other party, the court should inquire into the truth of it, and, if found untrue, that it should issue a peremptory mandamus. The practical construction of that statute has been for the court without a jury to try the cause. This is the first time to our knowledge that the claim has been made that the parties are entitled to a jury trial under our constitution, and that the statute, if interpreted as authorizing a trial by the court without the consent of both parties, is unconstitutional.

It is obvious that there was and could be no trial by jury in the proceeding for a writ of mandamus at common law, for no issue of fact could be tried in that proceeding. Such a trial was provided for in the statute of 1711, 9th of Anne; but that statute as such was never in force in Connecticut, and was not a part of the common law.

It is true a note at the end of *Strong's Case*, Kirby, 351, says:—" At the February term, 1788, the mandamus was

returned; and the court was requested to direct what should be the rule of proceeding in trying the sufficiency of the return; whether the common law, as it stood before the statute of 9th of Anne, or that statute; and the court said the statute of Anne should be the rule of proceeding." The only question seems to have been whether the sufficiency of the return should be tried in that proceeding, or whether the plaintiff should be compelled to bring an action for a false return. That case well illustrates the defect of the common law. It was an action to compel the town clerk to record a deed. It is obvious that an action for damages was not a complete and adequate remedy, and the court wisely decided that the facts might be determined in that case, so that the plaintiff might have his writ if entitled to it. In so deciding the court adopted the principle of the statute of Anne as a part of the common law of this state. The mode of trial—whether by the court or jury—was not the question.

The court, by deciding that the statute of Anne should be the rule of proceeding, did not decide that the trial should be by jury. That statute neither expressly nor by necessary implication requires a jury trial.

In *Meacham* v. *Austin*, 5 Day, 233, the truth of the return seems to have been admitted, so that there was no trial of any question of fact. In that case the court, in speaking of the power to grant writs of mandamus, says that it "has been frequently exercised." But in what manner questions of fact were determined does not appear. It has not been shown that they were tried by a jury, and there is no legal presumption that they were.

We conclude then that at the time of the adoption of the constitution it had not been the practice to try issues of fact in these cases to the jury. The statute of 1821 and the practice under it strengthen us in this conclusion.

That statute was passed soon after the adoption of the constitution, and the framers of it must be presumed to have known what the practice was. If it had been customary to try such cases to the jury, and it was understood that the right to do so was secured by the constitution, it is not to be

supposed that a statute violating that right would so soon pass the legislature. Add to these considerations the fact that the statute has been in force and acquiesced in for more than half a century, and that in none of the many cases relating to that writ which have since been before this court has the question ever been made before, and the conclusion is almost irresistible that such a practice never prevailed in this state, and that the clauses of the constitution referring to jury trials have no application to writs of mandamus.

The charter of the city of Waterbury (Session Laws of 1871, p. 605, sec. 16) provides as follows:—" There shall be but one collector to collect the town, city and center school district taxes, for said town, city and center school district of Waterbury. The collector annually chosen at the town meeting on the first Monday of October for said town, shall be, and he is hereby declared to be, the collector of taxes for said city and center school district, and he shall be qualified in the same manner as the collector now is for said city and center school district; and he shall receive for collecting all said taxes, in lieu of all fees or other compensation, a sum not exceeding two thousand dollars, to be paid by said town, city, and center school district respectively in proportion to their respective rate bills." The charter is a public act.

A statute passed in 1879 (Session Laws, chap. 62, p. 369) provides that " all town and city collectors whose compensation is fixed by a salary and not by a rate of commission, shall during their term of office have authority to collect all taxes due the cities and towns of which they are collectors, they having proper warrants therefor, and upon the expiration of their terms of office the rate bills not fully collected shall be delivered to their immediate successors in said offices respectively, who, with warrants to them directed, shall have authority to collect the taxes due thereon."

The plaintiff was elected collector for the town of Waterbury for the year 1879, at the October election in 1878. By virtue of the sixteenth section of the charter he thereby became the collector for the city. The act of 1879 took effect on the 27th of March of that year. In May following the

plaintiff demanded of the defendant, who was the collector for the preceding year, the rate bills for the preceding years on which there were taxes remaining due. The defendant refused to comply with the demand, and these suits, one in his favor as town collector and the other as city collector, are brought to compel the defendant to deliver to the plaintiff these rate bills.

The court directed a peremptory mandamus to issue, and the defendant assigns as error that the court erred in deciding that the collector for the town and city of Waterbury was a salaried officer within the meaning of the act of 1879.

We think there is no error in this. The collector is elected annually. His compensation is not a rate of commission but a fixed sum—$2,000. It is true the time or service for which he is to receive that sum is not expressly stated; but we think the fair import of the whole section is that he is to receive it for his services as collector during his term of office, which is one year; and that makes it a salary.

The defendant's counsel suggest that he is to collect the whole amount, or all that can be collected, of the taxes due to the three corporations, for which he is to receive $2,000, whether it takes one year or longer. Construing the charter in connection with the act of 1879, we think that is clearly not its meaning. If it would bear such a construction before it certainly will not now; for the two acts, relating as we think they do to the same subject matter, must be construed together. We see no sufficient reason for giving them such a construction as shall exclude the town and city of Waterbury from the operation of the later statute. We think, with the plaintiff's counsel, that the phrase "all said taxes" should be construed to refer to the taxes laid by all the corporations and not to all the individual taxes on the several rate bills.

Another error assigned is that the court erred in deciding that the act of 1879 by implication repealed the sixteenth section of the charter, at least in so far as the charter authorized the defendant to collect town or city taxes after the first Monday of January, 1879.

It is perhaps a sufficient answer to this claim to say that

the record does not show that any such decision was made, or that it was necessary to make such a decision. Indeed, the charter did not confer on him any such power. If he had it at all it was incident to his office, growing out of the fact that there were unpaid taxes on his rate bills to collect which he had a warrant. *Picket* v. *Allen*, 10 Conn., 146. That power if it existed was taken away when the act of 1879 took effect. After that it was clearly his duty to turn over his rate bills to the plaintiff.

It is also claimed that the court erred in deciding that the defendant's term of office expired on the first Monday of January, 1879. But the court was clearly correct in this. It is so provided in terms by statute. Acts of 1876, chap. 30; Acts of 1878, chap. 93. Whether the defendant had power to collect the taxes on his rate bill after that date, notwithstanding the expiration of his term of office, is a question not decided so far as the record shows. Nor do we consider it a material question, for, as we have seen, such authority ceased to exist on the 27th day of March, when the act of that year took effect.

The fact that no bond was given by the plaintiff as collector of the town taxes is urged as an objection to the issuing of the writ in that case.

The statute makes it the imperative duty of the defendant to deliver the rate bills to his successor. It is no part of his duty to see that his successor gives bonds. That duty devolves upon the selectmen, and it is not to be presumed that they will neglect it. Before his successor can collect the taxes he must have a warrant directed to him. The bond will doubtless be given before he receives the warrant.

There is no error.

In this opinion the other judges concurred.