# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1884.

THE STATE EX REL. THE COUNTY COMMISSIONERS OF CO-
LUMBIA COUNTY VS. COUNTY COMMISSIONERS OF SUWANNEE
COUNTY.

1. Delivery, by the maker of a bond payable to the holder, is presumed
from the fact of possession.

2. Prior to 1858 Columbia county, then embracing the territory of Su-
wannee county, had issued bonds for $100,000 in payment for
1,000 shares of stock in the F., A. & G. C. R. R. Co. In that
year an act was passed creating Suwannee county, and it was
provided that the Commissioners of Columbia should set apart
and transfer to Suwannee so many shares of the railroad stock
held by her as would constitute a fair division between them, to
be determined by the relative amount of taxable property; and
on making the transfer the Commissioners of Suwannee should
execute bonds payable to the Commissioners of Columbia for the
par value of the stock and deliver the bonds to the Judge of
Probate of Columbia in payment for the stock transferred.
Commissioners of Columbia in February, 1861, executed and de-
livered to the Commissioners of Suwannee an assignment, recit-
ing that they·"do hereby set apart and transfer to the county of
Suwannee 253 shares of stock in the F., A. & G. C. R. R. Co.,
being the relative proportion of the 1,000 shares now held by said
county of Columbia to which said county of Suwannee is entitled;
and we hereby authorize the county of Suwannee to receive in
her name certificates of said shares." Thereupon the Commis-
sioners of Suwannee county duly "Ordered, that we accept the
transfer of said stock and that we issue our bonds for the above
amount of $25,300 to the Board of County Commissioners of Co-
lumbia county." The bonds were issued: *Held*, that the above

assignment transferred a proprietary interest to the extent of 253 shares of the stock then held by Columbia county, and gave to Suwannee county the right and power to have the transfer made on the stock books of the railroad company whenever she desired to have it done, which right the courts would enforce.

3. The fact that the County Commissioners of Columbia county voted upon the whole 1,000 shares after the assignment, because the stock stood in its name on the railroad company's books, did not affect the proprietary rights of Suwannee county in the 253 shares. By the assignment Columbia county parted with its right of property and Suwannee county gained it.

4. The provision in the charter of the F., A. & G. C. R. R. Co. (Chapter 481, Section 14, Laws of 1852–3,) that a stockholder may transfer his interest in the stock, but the "transfer shall not be binding unless entered on the books of the company," is a provision for the protection of the company, and does not affect a transfer as between holder and assignee.

5. The acceptance of the assignment by Suwannee County Commissioners, the assignment being valid, and the issuing of the bonds, fixed the liability of the county of Suwannee.

6. Where distinct defences are set up in a return to an alternative writ of mandamus one or more may be demurred to and issue taken on the other.

7. Issues of fact in mandamus are tried by the court and not by a jury.

This is a case of original jurisdiction.

The alternative writ alleges substantially that James E. Young and the other relators, naming them, are the County Commissioners of Columbia county ; that the "Internal Improvement Act," approved January 6, 1855, authorized the various counties through or near which any of the lines of railroad or their extensions, contemplated by the fourth section of said act, should pass or in which they might terminate, to subscribe for and hold the capital stock of the railroad company authorized to construct the same, but that it should be first submitted to the vote of the legal voters of the county proposing to subscribe to such stock whether or not stock should be subscribed for and taken as

provided therein, and if it should appear that a majority of votes were in favor of such subscription it should be lawful for the Board of County Commissioners of the county to subscribe and take such an amount of stock as they should determine, not to exceed, however, fifty per cent. of the cost of construction through the county ; that by said act the County Commissioners of such county were authorized to issue bonds of the county, payable, with interest, at such times and places as they might deem proper, and dispose of the same for payment of such subscription, pledging the faith and resources of such county for the payment of such bonds and interest, and that the County Commissioners should, from time to time, levy and collect such a tax as should be necessary to pay the installments of interest and bonds as the same become due, or to create a sinking fund for the gradual reduction of the same, but the rate of interest was not to exceed ten per cent. per annum.

That the county of Columbia, through and by its County Commissioners, after having submitted the question to a vote of the legal voters of said county and there having appeared a majority of votes in favor of such subscription, did subscribe for and receive one hundred thousand dollars worth, or one thousand shares of the capital stock of the Florida, Atlantic and Gulf Central Railroad Company, a body corporate, which company, by having accepted the provisions of the said Internal Improvement law, was authorized to construct the line of railroad mentioned in said law through the county of Columbia.

That for the purpose of paying said subscription, the County Commissioners of Columbia county, as they were authorized by said act, did from time to time, during the years 1856 and 1857, issue bonds to the amount of one hundred thousand dollars principal, with coupons annexed, payable semi-annually, for the interest at the rate of eight per cent.

per annum, payable to said railroad company, and delivered them to said company in payment of the subscription of the one hundred thousand dollars stock subscribed and taken. At the time of said subscription and the delivery of bonds, the territory of the present county of Suwannee, Florida, was embraced within the territorial limits of Columbia county ; but the General Assembly of the State passed an act entitled "An act to create and organize the counties of New River and Suwannee," and approved by the Governor of Florida, on the 21st day of December, A. D. 1858, and among other things provided for the creation and organization from portions of the territory of said Columbia county of two counties, to be called respectively Suwannee and New River, and the present county of Suwannee hereinafter referred to is the county of such name created and organized by and under the provisions of said statute, said organization having been effected prior to the 5th day of February, A. D. 1861.

That the last mentioned act made it the duty of the County Commissioners of Columbia to set apart and transfer to Suwannee county, when fully organized, so many shares of the capital stock of said railroad company subscribed for and taken as aforesaid as would constitute the relative proportion thereof of said Suwannee county to be determined by the amount of taxable property within the limits of said three counties of Columbia, Suwannee and New River, and that the County Commissioners of the said county of Suwannee were required by said act on the making of the transfer to Suwannee county of said stock, to execute bonds of the county payable to the County Commissioners of Columbia county and their successors in office for such amounts as would at par value equal the par value of the shares of stock transferred, said bonds to have coupons attached, bearing interest at the rate of six per

cent. per annum and to be made payable, principal and interest, at periods corresponding precisely with the bonds of Columbia county already issued in payment for her stock in said railroad company, and to deliver the same to the Judge of Probate of Columbia county in payment of the stock so transferred, and it was by said act made the duty of the County Commissioners of Suwannee county, from time to time, to levy and collect such a tax as should be necessary to pay the installments of interest and the bonds as they became due. The rate of six per cent. interest, above mentioned, which the said new counties were required to pay on their bonds to Columbia county was subsequently increased to eight per cent. by an act approved December 19th, 1859, entitled " An act to correct an error in the printed bill entitled an act to create the counties of Suwannee and New River."

That on the 5th day of February, A. D. 1861, the County Commissioners of Columbia set apart and transferred to Suwannee county two hundred and fifty-three shares of stock in the said railroad company in consideration of twenty-five thousand and three hundred dollars in bonds of said Suwannee county to be issued and delivered in pursuance of law by the County Commissioners of Suwannee county to Columbia county, this being the relative proportion of the one thousand shares of said stock held by Columbia county, to which said county of Suwannee was found to be entitled, upon a fair division thereof between said three counties, as determined by the amount of taxable property within the limits of said three counties under the assessments made by the Tax Assessors of said counties next preceding the date of said transfer.

That on the 12th day of February, A. D. 1861, the County Commissioners of Suwannee ordered the issue and delivery of bonds of said county of Suwannee to the

said amount of $25,300, to said county of Columbia. In accordance with said laws and premises the County Commissioners of Suwannee county did on the 9th day of August, A. D. 1861, issue thirty-six bonds of said Suwannee county to said Columbia county, payable to the County Commissioners of Columbia county, and their successors in office or bearer, to the aggregate amount aforesaid, said bonds bearing interest at the rate of eight per cent. per annum, payable semi-annually on the first day of July and January, with interest coupons attached, said bonds being signed by Joshua Caraway, the President of the Board of County Commissioners of said County of Suwannee, and bearing the seal of said county, all of which bonds and coupons are held and owned by said county of Columbia and bearing date the said 9th day of August, A. D. 1861.

Here follows an allegation as to what bonds and coupons held by Columbia county are past due, and an allegation of the failure to pay and to levy a tax.

That on the first day of January, A. D. 1884, there was due and unpaid, and still remain due and unpaid on said bonds and coupons, including all matured coupons, maturing since July 1st, 1861, and matured bonds and interest accruing on matured bonds since the maturity thereof, the sum of sixty thousand, two hundred and fifty-two dollars, $60,252.00, (no relief being claimed as to coupons maturing July 1st, 1861,) for the payment of which sum said County Commissioners of Suwannee county should levy and cause to be collected a sufficient tax on the property and taxable resources in said county of Suwannee.

That one of said bonds maturing January 1st, 1872, of the denomination of one thousand dollars, and one of the coupons annexed thereto, are in the words and figures following:

No. 8.                                                          $1,000.
UNITED STATES OF AMERICA,                    STATE OF FLORIDA.
COUNTY OF SUWANNEE.
$25,300.00.

The real and personal estate of the citizens of the county of Suwannee held liable for the interest and ultimate redemption of this bond.

Issued by the Board of County Commissioners of Suwannee county, in payment to Columbia county, for the pro rata share of Suwannee county, of the subscription of Columbia county of one hundred thousand dollars to the capital stock of the Florida, Atlantic and Gulf Central Railroad Company, authorized by the 16th section of the act of the General Assembly, approved the 21st day of December, A. D. 1858, and corrected by the act of the General Assembly, approved the 19th day of December, A. D. 1859.

Know all men by these presents, that the county of Suwannee, by its Board of County Commissioners, doth acknowledge itself to owe unto the County Commissioners of Columbia county and their successors in office or bearer, one thousand dollars, which sum the said county of Suwannee promises to pay to the said Board of County Commissioners of Columbia county, or their successors in office or bearer, (on the 1st day of January, A. D. 1872,) together with interest thereon at the rate of eight per cent. per annum, payable semi-annually, on the first day of July and January of each and every year, from the 12th day February, A. D. 1861, on the presentation of the annexed coupons at Lake City until the principal sum shall have been paid. This obligation and all the benefits and rights arising therefrom may be transferred by special or general indorsement, or by delivery as if the same were a note of hand payable to bearer.

In witnesss whereof the Board of County Commissioners have hereunto affixed the seal of said county and have caused the same to be signed by their president on the 9th day of August, A. D. 1861.

Suwannee County,    ⎫         JOSHUA CARAWAY,
    L. S.           ⎬   Pres. Board County Commissioners
Florida.            ⎭

COUPON.

Florida, Atlantic and Gulf Central Railroad Stock:

The county of Suwannee will pay the bearer on the 1st day of January, 1862, forty dollars, being six months interest on their bond No. 8.

$40.  No. 2.

JOSHUA CARAWAY.

That the other bonds are similar in form, the amounts and numbers and date of maturity being, however, as above stated. The other coupons sued on are similar in form, the amounts of said coupons being for twenty or forty dollars, as above indicated, and maturing as above indicated, except that the coupons to bond number 36 are each for twelve dollars, said coupons maturing January 1st or July 1st, as above indicated.

The writ commands that respondents and their successors in office and every of you, to assemble, and, as such Commissioners, levy on the taxable resources and property in said county a tax sufficient to pay to the said county of Columbia the full amount, principal and interest, due on said bonds, maturing January 1st, 1872, and the interest falling due on January 1st, 1884, and anterior thereto, on said bonds, maturing January 1st, 1886, or that you appear and show cause why you refuse to do so.

The respondents filed their return, and relators joined issue upon the 28th paragraph thereof, and demurred to the balance of it, and thereupon the respondents moved to strike out the demurrer on the ground that relators could not traverse one part and demur to the balance of a return.

*After argument and a recess for consideration the motion was denied by the court, there being distinct defences set up, the Chief-Justice announcing that the conclusion was based on English authorities.* The King vs. Cambridge, 2 D. & E., 456; The Queen vs. Windsor, 7 A. & E., 908.

Thereupon the relators, nevertheless, upon a suggestion from the bench that it might facilitate the disposition of the case, extended the demurrer to the whole return.

The grounds of the demurrer were that the return does not state facts which in law constitute a defence to the case made by the alternative writ, and that it is contradictory, uncertain, evasive and otherwise insufficient.

There was a joinder in demurrer.

The first six paragraphs of the return demurred to admit the legislation set up by the alternative writ, and the subscription to stock, and issue of bonds of Columbia county, and that the territory of Suwannee county was included in Columbia as alleged, and that the organization of Suwannee was effected prior to February 5th, 1861.

The other paragraphs are in substance as follows:

7. Not true as alleged that the act of Dec. 21, 1858, (Ch. 895, p. 37,) made it the duty of Columbia Commissioners to set apart and transfer to Suwannee so many shares as would constitute the relative proportion of Suwannee according to the relative taxable property, but the act provides, sec. 15, so many shares as would constitute a *fair division of the 10,000 shares now held by Columbia county.*

8. Admits division of stock of the railroad company into shares of $100 each.

9. Not true as alleged that it was the duty of Suwannee *on making the transfer* by Columbia, to execute and deliver bonds equal to par value of the shares of stock transferred, *but,*

10. The act, (sec. 16,) provides that Suwannee and New River counties, on making the transfer, *as provided in preceding section* (15), shall execute bouds equal to par value of *stock transferred, to be delivered to Columbia county* in payment for *stock transferred as provided in preceding section.*

11. Denial that the act made it the duty of Suwannee county to collect taxes and provide for payment of bonds and interest, and allegation that by section 17 of the act it was made the duty of County Commissioners of said counties of Suwannee and New River, from time to time, to levy and collect such a tax as shall be necessary to pay the installments of interest and the bonds as they become due or to *create a sinking fund for the gradual reduction of the same.*

12. It was provided by the act that on failure to organize or to collect the taxes and provide for payment of bonds and interest then the same shall continue to be done *by the Assessor and Collector of Columbia county,* and after the organization of Suwannee county she did not levy and collect, but *Columbia* county *did* so from the tax-payers of Suwannee county to the amount of $6,000, *which has not been returned to Suwannee county.*

13. Admits increase of rate of interest from 6 to 8 per cent. as alleged.

14. Respondents further answering deny that the County Commissioners of Columbia county on the 5th day of February, A. D. 1861, set apart and transferred to Suwannee county two hundred and fifty-three shares of stock in said railroad company in consideration of twenty-five thousand three hundred dollars in bonds of said Suwannee county, to be issued and delivered in pursuance of law by the Commissioners of Suwannee county to Columbia county, as relators have alleged; and respondents expressly deny that the County Commissioners of Columbia county ever set apart and transferred to Suwannee county any shares of stock whatever in pursuance of law in the Florida, Atlantic and Gulf Central Railroad Company so as to transfer the interest of Columbia county in the same, or any part thereof, to Suwannee county, or to make the same binding on either

Columbia or Suwannee county or upon the Florida, Atlantic and Gulf Central Railroad Company or upon any one else.

15. It is true that 253 shares of stock was the relative proportion of S. county of 1,000 shares of stock held by C. county to which S. county was found to be entitled upon a fair division thereof between said three counties, as determined by the amount of taxable property within the limits of said three counties under the assessments made by the Assessors of the said counties next preceding the date of said transfer. But the 253 shares of stock was not a fair proportion of the stock to which Suwannee county was entitled, as shown by the act authorizing said transfer from the amount of taxable property in the three counties as ascertained at the time and in the manner as set forth.

16. Respondents further answering deny that on the 12th day of February, A. D. 1861, the County Commissioners of Suwannee county ordered the issue and delivery of bonds by said county of Suwannee to the said amount of twenty-five thousand three hundred dollars to the said county of Columbia as relators hath alleged. But that it is true that on that day the County Commissioners of Suwannee county did order the issue of the bonds of said county to Columbia county for the sum of twenty-five thousand three hundred dollars, and further ordered said bonds to be procured by J. Caraway and tendered to Columbia county at as early a day as practicable. Respondents further answering say that on the 12th day of February, A. D. 1861, before the aforesaid orders were made, the said County Commissioners of Columbia county pretended to have transferred, and then and there assured the County Commissioners of Suwannee county they had set off and transferred to Suwannee county two hundred and fifty-three shares of the capital stock of the Florida, Atlantic and Gulf

Central Railroad Company according to law, and that thereby Suwannee county was vested with all the rights of a stockholder in said railroad company ; but that in point of fact said pretences and assurances so made as aforesaid were not true.

17. But that the County Commissioners of Suwannee county then and there believing the said assurances to be true and that said pretended transfer of said stock was a valid and *bona fide* transfer and conferred upon Suwannee county the rights of a stockholder in said railroad company, and that by means thereof there was imposed on Suwannee county a legal liability to execute and deliver the bonds of said company to Columbia county, did on the 9th day of August, A. D. 1861, issue thirty-six bonds of said Suwannee county to said Columbia county, payable to the County Commissioners of Columbia county and their successors in office or bearer to the aggregate amount aforesaid, and that said bonds were bearing interest at the rate of eight per cent., payable semi-annually on the first day of July and January, with interest, coupons attached, said bonds being signed by J. Caraway, President of the Board of County Commissioners of Suwannee county, and said bonds bearing the seal of said county and dated as alleged by relators. But respondents deny that said thirty-six bonds were ever issued by Commissioners of Suwannee county to Columbia county in accordance with said laws and premises as relators have alleged.

18. Admits that all said bonds and coupons are *held* and *owned* by Columbia county, *but* they are not held by Columbia county *legally or lawfully*, and deny that such possession and ownership entitles Columbia county to collect the same.

19. On 9th August, 1861, believing from the representations of Commissioners of Columbia county that they had transferred to Suwannee county, on February 12, 1861,

her relative proportion of stock, Caraway, President of Board of Suwannee county, carried the bonds to Columbia county, but Caraway finding the representations untrue *refused to deliver to Columbia county until the transfer was lawfully made by Columbia county on the books of the R. R. Co.* Then and there Caraway was assured by the Chairman of Columbia Commissioners *that it should be done*, left the bonds with Alex. Young to be delivered when the transfer should be *made on the books of the R. R. Co.*, and not before, and no *such transfer* was ever made, and the bonds remained in the hands of Young till after close of war and until the road was sold, *and if delivery was made*, which is denied, *it was without authority* or consent of Suwannee county.

20. Admission as to bonds and coupons held by Columbia and past due.

21. Suwannee county admits it has *not* levied or collected the tax, but refused.

22. Admits copies to be true.

23. Suwannee county has not paid anything and admits on January 1, 1884, there remained unpaid on said bonds and coupons maturing since July 1861, $60,262.

24. Suwannee county has not levied a tax to pay interest nor principal nor sinking fund though requested, because the bonds were illegal and void for want of consideration and want of delivery, and also because Columbia county has voted the entire stock long after the pretended assignment, to wit: up to 1868, and received large dividends thereupon to the exclusion of Suwannee county.

25. Columbia county has held and controlled the entire stock and lost it, and afterwards compromised the entire original bonded debt which had a legal existence at thirty cents on the dollar, and interest reduced to 6 per cent. on long time.

26 and 27. Suwannee has commenced a chancery suit vs. Columbia county, to secure a fair adjustment of their matters, and is willing to give new bonds on fair terms.

28. And respondents in obedience to the alternative writ of mandamus to show cause why they should not levy or cause to be collected said tax for an equitable defence thereto say that the said Florida, Atlantic and Gulf Central Railroad Company from the year A. D. 1860, to the year A. D. 1868, made and declared large dividends in operating their said railroad, over and above the actual expenses incurred in operating the same, and that the county of Columbia represented and claimed to said railroad company to be the sole owner of the one hundred thousand dollars worth of stock then standing in the name of Columbia county on the books of said railroad company. That Columbia county claimed to be entitled to receive, and did demand and receive from the said railroad company from time to time the entire dividends to which the said one hundred thousand dollars worth of stock was entitled amounting in the aggregate to over ($164,000) one hundred and sixty-four thousand dollars, which sum so received was more than sufficient to have paid off and discharged the entire original bonded indebtedness of Columbia county. and Suwannee county for said stock. That no part of said dividends so received by Columbia county of the net earnings of the said railroad was ever paid to Suwannee county or credited upon the bonds of Suwannee county, that the proportionate share of Suwannee county in said dividends amounted to over ($29,000) twenty-nine thousand dollars. That Columbia county instead of crediting the said bonds of Suwannee county to Columbia county, (which Columbia county claimed to hold) therewith and without paying or offering to pay any part of the said dividends to Suwannee county, without the knowledge or consent of Su-

wannee county invested a large amount of the relative share of Suwannee county therein in the bonds of the Confederate States of America, and which bonds were made payable solely to the county of Columbia and which have never been of any benefit to the county of Suwannee whatever, and respondents submit that by reason of the premises these respondents should not be required to levy and cause to be collected the amount of the tax as set forth in said alternative writ of mandamus.

29. Columbia county did issue and did deliver to the railroad company $100,000 of its bonds, but the railroad company never parted with $20,000 thereof to *bona fide* holders, and Columbia county is not liable for the $20,000 and should not come against Suwannee county for any of it, and the original alleged bonded indebtedness of Suwannee county to Columbia was based upon an estimate of one hundred thousand dollars of bonds instead of eighty thousand having any legal existence; the alleged liability of Suwannee county to Columbia county should in like manner be abated one-fifth besides interest, and respondents should not be required to levy and cause to be collected a tax for the full amount.

30. Columbia county has compromised at 30 cents on principal, to wit: at 5, 10, 15 and 20 years at 6 per cent. interest, and only $80,000 have been presented for settlement under the compromise.

31. Columbia procured the bonds to be issued by untrue and covenous representations made to Suwannee county, to wit: that 253 shares of the stock had been set off and transferred to Suwannee, when it had not been done according to law, and no consideration, &c., to Suwannee therefor.

The demurrer was argued by—

*A. B. Hagan* and *Geo. P. Raney* for the Relators.
*John F. White* and *John A. Henderson* for Respondents,

THE CHIEF-JUSTICE delivered the opinion of the court on the demurrer:

The demurrer of the relator to the return of respondents involves the sufficiency of the allegations of the alternative writ. We regard the facts stated in the writ to be sufficient.

The return is voluminous and for convenience its paragraphs have been numbered. A suggestion is made in the return that two hundred and fifty-three shares of stock in the railroad company was not the proper proportion of shares to which Suwannee county was entitled, because that number of shares is computed upon the basis of one thousand shares held by Columbia county, whereas the act contemplates a division upon the basis of "the ten thousand shares held by Columbia county." The allegations in the writ and the admissions of the return show that one thousand shares and no more were held by Columbia county. The words "ten thousand shares" contained in the act must be construed to name a maximum number of shares and to include all the shares so held by Columbia county, as the object of the act was to apportion these shares according to the relative value of property assessed for taxation in the territory of the several counties formerly composing ·Columbia.

As to the allegation in Paragraph No. 12, that the officers of Columbia county had collected the sum of six thousand dollars from the tax-payers of Suwannee which had not been returned to Suwannee, no issue arises because it is admitted elsewhere in the return that the sum claimed by Columbia county remains unpaid on said Suwannee county bonds.

Paragraph 18 of the return admits that the bonds and coupons "are held and owned by Columbia county," but al-

JUNE TERM, 1884. 17

State ex rel. Co. Com'rs v. Co. Com'rs—Opinion of Court.

leges that they are not *lawfully* held and denies that such possession and ownership entitles Columbia county to collect the amount of money represented by the bonds and coupons. This paragraph must be construed as an admission that the bonds were delivered by Suwannee to Columbia county, and that Columbia is the holder thereof, but the denial therein of the right of Columbia county to enforce the collection of the money, and the facts stated in those numbered 14, 16 and 17 put in issue the legal liability of Suwannee.

The allegation in paragraph 30, that Columbia county has settled and compromised the entire bonded indebtedness at thirty cents on the dollar to the extent of $80,000, constitutes no defence on the part of Suwannee county, If the latter county is liable at all she was liable *when the bonds were made and delivered*, and the subsequent payment or compromise of Columbia does not enure to the benefit of Suwannee unless she was a party to the transaction and secured the benefit thereof by similar payment or compromise. A debtor is not released from his obligations by the fact that the creditor is insolvent or compounds his debts at less than he owes.

The liability of Suwannee county, if it existed, was not affected by the alleged fact (paragraph 24) that after the supposed assignment of stock to Suwannee, the officers of the county of Columbia voted upon the stock standing in her name on the books of the railroad company. If the transfer was made as contemplated by the act of the Legislature, Suwannee county had the legal right to have a transfer made by the company on the books of the company. If she neglected to do this she tacitly consented to the exercise of the privilege of voting the stock by Columbia county as a nominal stockholder.

It was not essential to an effectual assignment and trans-
2

fer of this stock by Columbia county that the transfer should be made " on the books of the company." The provision of section 14 of the charter of the railroad company. (Chapter 481, Laws of 1852,) that any stockholder may have the right to sell or transfer his interest in the same or any part thereof, " which transfer shall not be binding unless entered on the books of the company," is a provision for the protection of the company as to any liens it may have on the stock, and that it may determine the right to vote, &c., in the management of the road, and does not affect contracts between holders and others concerning it which do not affect the rights of the company. Field on Corporations, §131; Duke vs. Cahawba Nav. Co., 10 Ala., 82 ; Chambersburg Ins. Co. vs. Smith, 11 Pa. St., 120 ; Eames vs. Wheeler, 19 Pick., 442; Stone vs. Hackett, 12 Gray, 227; Bank of Utica vs. Smalley, 2 Cow., 770, 778.

Paragraphs numbered 14, 16, 17 and 28 make issues of fact which seem to materially affect the rights of the relator. The setting apart and transferring the shares of stock owned by Columbia county to Suwannee county was a condition and consideration of the execution and delivery of the bonds by the Suwannee County Commissioners. Chap. 895, Laws of 1859 ; Canova vs. Comrs. of Bradford Co., 18 Fla., 512.

Paragraph 28 of the return alleges that Columbia county has received from the R. R. Co. a large amount of dividends on the whole amount of stock, a *pro rata* share of which should be applied to the extinguishment of the bonds of Suwannee county. This shows a defence to the extent of the dividends applicable to the 253 shares of stock alleged to have been set apart to Suwannee county.

Except the foregoing there are no material issues of fact presented by the return.

The demurrer is overruled with leave to plead over.

The relators thereupon took issue upon the 14, 16, 17 and 28 paragraphs of the return.

Upon the issues of fact coming on to be tried, the respondents demanded a jury, and relators opposed the same, contending that all issues should be tried by the Court, and i was argued by counsel for the respective parties.

The motion was denied, the following memoranda of views and authorities being filed by the Chief-Justice:

On the motion of respondents that a jury be called to try the issues of fact. Statute of 9 Anne refers to specific cases, viz : controversies between persons claiming offices and archives.

The principles of pleading in such cases provided in that act have been adopted by the courts generally.

At common law no issues were tried. The return was conclusive. But since that act issues have been allowed to be made up and tried.

We have no statute requiring or authorizing such issues to be tried by a jury in this court. No such statute existed when the Constitution was adopted.

Constitutional jurisdiction of the writ is conferred on this court, and the proceeding is at common law.

The right of trial by jury *preserved* by the Constitution is not *extended* to cases where it did not exist before.

Statute of 9 Anne, ch. 20; High Mand., p. 647; High Ex. Remedies, §448; Universalist Ch. vs. Columbia, 6 Ohio R., 446; Chumasero vs. Potts, 2 Mont., 265; Castle vs. Lawlor, 47 Conn., 340.

Motion denied.

The trial of the issues of fact then proceeded, and witnesses were examined orally, and documentary evidence introduced by both parties—and the cause was argued by counsel, and taken under consideration by the court, and at a subsequent day—

The CHIEF-JUSTICE delivered the opinion of the court upon the final hearing.

The question submitted upon the final hearing of this cause is, whether as between Columbia and Suwannee counties there was such a " setting apart and transfer " by Columbia county Commissioners to the county of Suwannee of so many shares of the capital stock of the A. & G. C. R. R. Co. "as shall be necessary to constitute a fair division" of the stock held by Columbia county, upon the basis of the assessed valuation. Chapter 895, Laws of 1858-9.

It is agreed that of the one thousand shares held by Columbia county, the proportion to which Suwannee county was entitled was 253 shares. Columbia county held a certificate for one thousand shares, issued by the railroad company, which certificate was the *evidence* of ownership.

On the setting apart and transferring to Suwannee county of 253 shares, the county of Columbia was entitled to the bonds of Suwannee county, for the face value of the stock, to wit: $25,300.

The evidence submitted shows, by the records of the County Commissioners of Suwannee county, that on the 12th day of February, 1861, a committee of the County Board of Columbia county met the Suwannee County Board and presented to them a paper, signed and authenticated by the Columbia Board, dated February 5, 1861, reciting that in consideration of $25,300, as well as in pursuance of the act of the General Assembly, approved Dec. 21, 1858, the Board of County Commissioners of the county of Columbia " do hereby set apart and transfer to the county of Suwannee, in said State, two hundred and fifty-three shares of stock in the Florida, Atlantic and Gulf Central Railroad Company, being the relative portion of

the one thousand shares of said stock now held by said county of Columbia to which said county of Suwannee is entitled upon a fair division thereof between the three counties of Columbia, Suwannee and New River, * * * and we hereby authorize said county of Suwannee to receive in her name certificates of said shares." This was signed by the Commissioners of Columbia county under their seals.

On the same 12th of February, 1861, at a meeting of the County Commissioners of Suwannee county, as shown by their records, they recite the tender to them by the Columbia Commissioners of the 253 shares of stock, and " it is therefore ordered that we accept the transfer of said stock and that we issue our bonds for the above amount of twenty-five thousand and three hundred dollars to the Board of County Commissioners of Columbia county, bearing date with these presents. On motion it was ordered that J. Caraway be appointed a committee of one to procure bonds with coupons attached and tender to Columbia county for the stock transferred, at as early a day as practicable."

On the paper presented by the Columbia Commissioners is indorsed the following, signed by the Commissioners of Suwannee county: " Be it remembered, that on this, the 12 day of February, A. D. 1861, that we, the County Commissioners of Suwannee county, do hereby accept the within named transfer with all its legal bearings, and was entered upon the records of said court."

Columbia county is in possession of the bonds signed by the President of the Board of Commissioners of Suwannee county, with coupons attached, executed in pursuance of the foregoing order of the Commissioners of Suwannee county, which bonds and coupons are the basis of this proceeding. Being the holder, she is presumed to

be the legal holder and owner by a delivery by the maker.

The *lawful* delivery was denied, but there is no evidence to rebut the presumption of due delivery, arising out of the facts stated.

But Suwannee county denies the consideration, to wit: the due "setting apart and transfer" of the stock of the railroad company, which is a condition precedent to the liability of Suwannee on her bonds.

The paper presented by the Columbia County Commissioners to the Commissioners of Suwannee is an assignment by the Columbia County Commissioners to Suwannee county of two hundred and fifty-three shares of stock in the railroad company. It "set apart and transferred" to Suwannee county 253 shares of the one thousand shares held by Columbia county.

But it is objected that the transfer was not made upon the books of the R. R. Co.

We have held in a previous opinion in this case that a transfer on the books of the R. R. Co. was not necessary to an assignment of the stock as between the contracting parties. A review of the authorities confirms this opinion.

But they say the 1,000 shares were held in one certificate and no certificate for 253 shares of that stock was ever delivered by Columbia Commissioners to Suwannee. It is not to be controverted that there was assigned to Suwannee 253 shares of the stock. That assignment in law and in equity gave Suwannee county *an interest in the stock* of Columbia county to the amount named, and by the same act Columbia county *parted with it*. The certificates of stock are not stock but the *tangible evidence* of ownership. The assignment not only transferred the property called stock, but authorized Suwannee county to receive the certificates thereof in her own name. What more did she demand? She had the transfer of the property, she owned it, and she had the au-

thority to procure the *evidence* of ownership of that property from the railroad company. She had the value, and all that was necessary to become a *voter* in the railroad company was to obtain the certificate if she wanted it. Suwannee accepted the transfer by assignment and ordered the unconditional delivery of the bonds, and the bonds were delivered as is shown. It does not appear that there was any obstacle to the " transfer on the books of the company," for it does not appear that Suwannee county ever applied for such transfer ; nor does it appear that any legal or equitable right was ever denied her.

Columbia county said to her, " we hereby assign the stock and when you want stock certificates to represent what we have given you go and take them, you have our assent, and meantime we have the evidence of the ownership which is at your command, and so your title is indisputable."

Did not Suwannee county become invested by the assignment with 253 of the 1,000 shares ? Did she not become an owner, legally and equitably, with Columbia county in the 1,000 shares ? Until Suwannee county chose to take possession of the muniments of title at her command, and so long as she allowed Columbia to hold those muniments as a constructive trustee, Columbia was liable to account for all profits which accrued upon the 253 shares.

No authorities are produced to oppose this right of property in Suwannee county. None have been produced which deny her right to compel the issue of stock certificates in her own name if she desires to hold them.

It is true that if an assignee of stock in an incorporated company chooses to permit it to remain registered in the name of the assignor, it may as a matter of law become liable to be seized for the debts of the registered owner, but that is the penalty of neglect to make a transfer on the

books of the corporation. Many of the cases cited by counsel are cases of this character. There can be no pretence that the value of this stock has been lost to Suwannee county for any such reason. There was no time while the F., A. & G. C. R. R. Co. was in existence that she could not have had her own name entered on the books of the company by means of the assignment which she accepted ; and the courts would have enforced her right if the company or Columbia connty had been disposed to resist it.

The stock books and records of the proceedings of the railroad company were put in evidence to show that the stock was registered in the name of Columbia county, and that her County Commissioners had, after the assignment of the 253 shares, still voted the 1,000 shares in the election of officers and the management of the affairs of the railroad company, electing citizens of Columbia county to its offices and keeping the principal office within the county.

But we do not see that this action or these circumstances affect the rights of Suwannee county. The Commissioners of Columbia county voted the 1,000 shares because they stood in their name on the books. The action of these County Commissioners was lawful for that reason. That Suwannee county was entitled to vote this stock upon making the proper application we cannot question. That her Commissioners neglected to take care of her interest was doubtless because they were satisfied that they were properly cared for by their neighbors of Columbia. *The stock remained her property* notwithstanding she permitted other people to use it.

There is no evidence to support the allegation of the return that the bonds were obtained by Columbia County Commissioners by means of any fraud or false representation or pretence, or that any improper representations were

made to the Commissioners of Suwannee county of law or fact in the matter.

Nor is it shown that Columbia county received as dividends on account of the railroad stock anything of value for which she should account to Suwannee county in abatement of the amount due on its bonds.

A peremptory writ is granted.