THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE AMERICAN LIFE INSURANCE COMPANY, Appellant.

*Opinion filed April 22, 1915.*

1. PLEADING—*filing of pleas is a waiver of the alleged error in overruling demurrer.* Filing pleas to the declaration is a waiver of the alleged error of the court in overruling a demurrer to the declaration.

2. SAME—*when question of striking special pleas from files is not preserved for review.* The question whether the court erred in striking special pleas from the files is not preserved for review where the motion and the ruling of the court are not incorporated in the bill of exceptions.

3. INSURANCE—*the statute providing a penalty for rebating is valid.* Paragraph 27 of the Insurance act, which provides for a penalty for unjust discrimination in insurance rates between insurants of the same class, etc., is a reasonable regulation of the business methods and practices of life insurance companies and is a valid exercise of the police power of the State.

4. SAME—*what is a mere shift to evade provision of statute against unjust discrimination.* An agreement by a life insurance agent to take one-third of the first premium in cash and allow the insured to pay the balance by helping the agent in working up his business in the neighborhood is a mere shift or device to evade the statute against unjust discrimination in insurance rates, even though the insured did do some work for the agent, which the latter said he was satisfied was enough to even up the account.

APPEAL from the Circuit Court of Massac county; the Hon. WILLIAM M. CLEMENS, Judge, presiding.

E. B. EVANS, GEORGE B. BAKER, and H. A. EVANS, for appellant.

FRED R. YOUNG, State's Attorney, for the People.

Mr. JUSTICE WATSON delivered the opinion of the court:

The State's attorney of Massac county brought an action of debt in the circuit court of that county in the name of the People, against appellant, for the recovery of a statutory penalty for the violation of paragraph 27 of chapter 73 of our statutes, (Hurd's Stat. 1913, p. 1388,) and recovered a judgment for the sum of $750 and costs, the cause having been by agreement tried by the court without the intervention of a jury. An amended declaration was filed containing two counts, substantially similar, charging appellant with issuing its policy of life insurance to one Winfield Scott Dixon for $5000 for a premium of $145.75, the correct amount of annual premium, considering his age, expectancy of life and other items necessary to be considered, and with rebating a portion thereof to him, and thus permitting and making a distinction between insurants of the same class and equal expectation of life, contrary to law. The appellant filed a general and special demurrer to each count of the declaration, and the same being overruled it filed the plea of the general issue and two special pleas. On motion of the State's attorney the court held the special pleas were equivalent to the plea of the general issue and ordered them stricken from the files. At the close of the trial appellant offered fourteen propositions to be held by the court as the law applicable to the case, and the court refused to so hold as to each of them, after having refused appellant's motion, at the close of the evidence for the appellee, and again at the close of all of the evidence, to find the issues for the appellant. Judgment having been entered against appellant, an appeal was prayed, allowed and

perfected to this court, and upon the record appellant has made thirteen assignments of error.

The evidence shows that R. W. Erwin, agent for appellant, solicited Dixon to purchase a life insurance policy in the sum of $5000 from the appellant. Dixon was then forty-two years of age. He wanted to buy a life policy, which fact was known by several agents of different companies who had solicited his application. After getting the prices and terms from all of these agents and acquainting himself with the terms and conditions of their respective policies, Dixon applied for and received of appellant the policy introduced in evidence in this case. The application was in writing and a copy thereof is attached to the policy, wherein the annual premium for the policy is stated to be $145.75, which amount Dixon in his application agreed to pay for said policy as first year's premium. In paying this premium Dixon gave Erwin his note for $48.50, (one-third of $145.75,) and later he paid the note by giving his check to Erwin for $42.65 and giving him a turkey worth $2.60, the balance of the note being discounted by Erwin, giving to Dixon the same discount he would have been required to give the bank if discounted there. The contention of appellant is, the other two-thirds of the premium was paid in the manner following, quoting from the testimony of Dixon as abstracted, viz.: "He agreed to let me have the policy for one-third of that sum in money and I was to work and help him around through the neighborhood in working up his business to pay off the difference. The character of work I was to do was booming up his work and driving him through the country, trying to work up prospects. I cannot say exactly how much work I did. I did a good deal of it, as he was in the neighborhood several different times."

It is strenuously contended by appellant in the argument that fatal error was committed by the trial court in admitting in evidence the supposed Dixon policy of insur-

ance without proof of its execution by the company or its officers, but we shall not give attention to that contention, nor to the authorities cited thereon by the appellant and appellee, because the point is waived. In the brief of appellant, under the heading "Facts," it is said: "Dixon applied for and received of appellant the policy introduced in evidence in this cause as 'Plaintiff's exhibit A.'"

Another contention of appellant is that Erwin was not shown by the plaintiff below, by competent evidence, to be the agent of appellant. The appellee, however, offered in evidence the depositions taken by appellant of two of its general officers,—the vice and acting president, and the secretary, who was also agency manager. A. D. Hindman, the vice-president, testified Erwin "was in 1912 agent for the company in southern Illinois, soliciting applications for insurance, securing the medical examination and making collections for and reporting to the company." J. C. Griffith, the secretary, testified he closed an agency contract with Erwin and one Raper on October 26, 1911, covering territory of southern Illinois, and that on August 1, 1912, a new contract was made with Erwin, under which he served until April, 1913. We are of opinion this testimony, together with similar testimony of Erwin and Dixon, satisfactorily establishes the agency, and the trial court committed no error in that regard.

The contention of the appellant that the court erred in overruling its general and special demurrers to the declaration cannot receive consideration here. The subsequent filing of its pleas constituted a waiver of that contention under the repeated decisions of this and other courts of last resort. *Walker* v. *Welch,* 14 Ill. 277; *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Robson,* 204 id. 254.

The question as to whether the court erred in striking the special pleas from the files has not been preserved for review, the motion and the ruling of the court not being in-

corporated in the bill of exceptions. *Gaynor* v. *Hibernian Savings Bank,* 166 Ill. 577.

The appeal brings the case to this court because it is contended, and apparently agreed, the validity of the statute in question is involved. The appellant claims that the enactment is in contravention of the fifth and fourteenth amendments to the constitution of the United States, and also of section 11 of article 2, section 13 of article 4, section 22 of article 4 and section 2 of article 2 of the constitution of this State. However, in its printed argument the appellant confines the constitutional discussion to the supposed infringement upon section 11 of article 2 of the State constitution, which provides, among other things, that "all penalties shall be proportioned to the nature of the offense," and no other need be considered by us.

The statute under consideration imposes a penalty of $500 to $1000 and a forfeiture of the certificate of authority of the offending agent, the penalty to be recovered in an action such as was brought in the case at bar. This statute was considered by this court in the cases of *Franklin Life Ins. Co.* v. *People,* 200 Ill. 619, *Metropolitan Life Ins. Co.* v. *People,* 209 id. 42, and *People* v. *Commercial Life Ins. Co.* 247 id. 92, and its constitutionality was there sustained, the court holding its provisions are a reasonable regulation of the business methods and practices of life insurance corporations under the police power of the State. We quote with approval also a paragraph from *Franklin Life Ins. Co.* v. *People, supra,* which disposes of the appellant's contention to the effect it should not be held liable for the acts of Erwin not in line with his agency instructions, where this court, speaking through Mr. Justice Boggs, said: "If the violation of a statute is the act of an agent of a corporation, done by such agent while acting in the scope of his authority, it is a violation of the statute by the corporation, and it is immaterial whether the board of directors of the corporation or any of its of-

ficers having general authority knew of such violation or intended violation, connived at it or ratified it or approved it. If an agent of a corporation organized to issue policies of life insurance is clothed with power to solicit and receive applications for insurance, shall, while (to quote the language used in the propositions presented to the court) 'canvassing for policies of insurance,' violate the statute against unjust discriminations, etc., between insurants of the same class, etc., in the rates of premium, etc., or in rebates, his unlawful act is not any less the act of the company, nor less unlawful, though it be not shown that the board of directors of the company or some superior general officer knew of, participated in or approved such wrongful act of the agent."

The only remaining contention is, the finding and judgment of the court are not in accordance with or supported by the weight of the evidence, particularly in the matter of the payment or non-payment of the premium on the Dixon policy. After a careful consideration of the testimony bearing upon this subject we are convinced the arrangement made by and between Dixon and Erwin was a mere shift or device to evade the provisions of the law. Dixon, it is true, drove about the country a few times with Erwin and perhaps introduced him to a few "prospects." That he earned exactly two-thirds of $145.75 by that method does not appear, nor is it in evidence that any allowance was made to him on a per diem or mileage or other business basis. When Erwin left that locality he merely expressed himself satisfied that Dixon had done enough to even up the account. The finding of the trial court on this subject has our approval.

There being no reversible error appearing of record the judgment of the circuit court is affirmed.

*Judgment affirmed.*