**The People of the State of Illinois ex rel. First National Bank of Hammond, Indiana, Defendant in Error, v. Jacob Czaszewicz et al., Plaintiffs in Error.**

## Gen. No. 25,029.

1. MUNICIPAL CORPORATIONS, § 115*—*when evidence shows bonds were not paid for by treasurer or by any one for him.* In a mandamus proceeding to compel a former city treasurer to give a detailed account of his receipts and expenditures as treasurer, where a question of fact arose as to whether such official obtained possession of seven bonds from a bank irregularly, and where the

---

See Illinois Notes Digest. Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

treasurer contended that such bonds were paid for by him, the evidence warranted a conclusion that the bonds were not paid for by the treasurer, or by any one for him, the evidence by the official on the question being unconvincing and unreliable.

2. MANDAMUS, § 150*—*when respondent waives error in overruling of general demurrer to petition.* Where a general demurrer to a petition for mandamus was overruled, the respondent by pleading over waived any error of the court in its ruling.

3. MANDAMUS, § 150*—*right to raise question of sufficiency of verification of petition by demurrer.* The question of want of sufficient verification of a petition for mandamus cannot be raised by demurrer.

4. PLEADING, § 376*—*what is remedy for want or insufficiency of verification.* Neither want of an affidavit or verification to a pleading nor the insufficiency of the verification is ground for demurrer, the remedy being by motion to strike the pleading from the files.

5. MANDAMUS, § 149*—*necessity that petition be verified.* Since the passage of the act of 1874 relating to mandamus (J. & A. ¶ 7330 et seq.), a verification of the petition is unnecessary.

6. JURY, § 28*—*going to trial without asking for jury as waiver of right to jury trial.* In a mandamus proceeding the right to a trial by jury is waived where the respondent proceeds to trial without asking for a jury.

7. JURY, § 28*—*when objection to trial by court comes too late.* An objection to the trial of a cause by the court without a jury comes too late when it is made after the court has heard the case and announced its conclusions.

8. MANDAMUS, § 120*—*when proceeding to compel former city treasurer to pay over money to successor may be maintained in name of People.* In a mandamus proceeding to compel a former city treasurer to give a detailed account of his receipts and expenditures as treasurer, and to pay over certain money to his successor in office, where the purpose of the proceeding is to compel the payment of money into the city treasury, so that the city may discharge its obligations by paying to a bank, appearing as relator, amounts due upon certain bonds, the money retained by the treasurer is public money, and the proceeding may be maintained in the name of the People.

9. MANDAMUS, § 69*—*when proceeding to compel former city treasurer to pay over money to successor may be maintained notwithstanding expiration of respondent's term of office.* In a mandamus proceeding to compel a former city treasurer to account for his receipts and expenditures as treasurer and to pay over money alleged to be retained, it cannot be urged that the proceed-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ing will not lie because of the expiration of the term of office of the respondent, as the remedy is available to compel the performance of acts which were not performed during the official's term of office, and which should have been performed.

10. MANDAMUS, § 69*—*when writ will lie to compel city treasurer to pay over money to successor.* Where a city treasurer fails to perform his duty of paying certain money to his successor in office, which money is retained by the treasurer for his own use, when it was collected to discharge certain bonds, mandamus is available to compel performance of the duty, and it cannot be contended that the proceeding is merely to enforce the payment of money and that for such reason the remedy is not available.

Error to the Circuit Court of Cook county; the Hon. FRANK J. JOHNSTON, JR., Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed January 12, 1920.

SAMUEL K. MARKMAN, for plaintiffs in error.

BURTON, KANNALLY & MEGAN, for defendant in error.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The writ of error in this cause brings before us for review errors assigned on an order directing a peremptory writ of mandamus to issue against the respondent, Jacob Czaszewicz, former city treasurer of the City of West Hammond, commanding him to forthwith make out and file with the city clerk of said city a corrected, full and detailed account of all the receipts and expenditures of the corporation as properly and truly shown by his books and of all his transactions as such city treasurer during the fiscal year ending April, 1915, and showing the state of the treasury at the close of said fiscal year so far as relates to the funds of special assessments numbered 55, 43, 33 and 35, and to deliver and pay over forthwith to his successor in office, the present city treasurer, the sum of $2,300 to the credit of four certain special assessment funds as follows: To the credit of the fund of special

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

assessment number 55, second instalment, $2,000; to the credit of the fund of special assessments numbers 43, 33 and 35, third instalments of $100 each.

The petition alleged *inter alia* that the respondent, Jacob Czaszewicz, was city treasurer of West Hammond from the 1st of May, 1913, until May 1, 1915; that on various dates prior to May 1, 1915, the City of West Hammond issued sundry special assessment bonds and warrants which were purchased by relator, the First National Bank of Hammond; that on January 11, 1915, and again on March 31, 1915, respondent, as such city treasurer, paid relator sundry sums of money in payment of certain obligations of the said city; that the payments made on the last-mentioned dates did not include obligations of the City of West Hammond aggregating $2,300 and payable out of special assessments 33, 35, 43 and 55, the subjects of controversy in this case; that on the last-mentioned dates, in turning over and surrendering to respondent as such city treasurer for cancellation certain written obligations of said city, "relator, by accident and mistake, handed to the said Czaszewicz the seven above described bonds (aggregating the said $2,300), and the said Czaszewicz, as city treasurer, received and took the seven said bonds, and, without the knowledge or consent of the relator, caused the seven above described bonds to be canceled and marked paid, and entered each of the seven said bonds on his books as city treasurer, as paid, and on April 29, 1915, credited himself on his said books with one sum of two thousand ($2,000) dollars and three sums of one hundred ($100) dollars each, as paid out of the treasury of the said City of West Hammond by him for and on account of the principal sums then respectively due and payable on the seven said bonds"; that the handing over of said seven bonds by relator to respondent, the receiving of same by respondent and the cancellation thereof, the marking of them paid and the entering of them on the books of the respondent as paid and the crediting

of respondent on his official books with the said sums,. were all done through mutual mistake and error on the part of the relator and the respondent, Czaszewicz; that said $2,300 was never paid by respondent to relator; that subsequent to May 1, 1915, relator learned that said seven bonds were in the possession of the City of West Hammond, canceled and marked paid, and that demand was made by relator upon respondent for restitution before May 1, 1915.

On November 15, 1915, a written notice was served upon the City of West Hammond describing the seven bonds in question, alleging that they were wrongfully in possession of the city and demanding that they be immediately turned over to relator.

To this petition relator filed a general demurrer which being overruled he then filed several pleas. A general demurrer to these pleas was interposed and overruled. Thereupon replications, rejoinders and surrejoinders were severally interposed; but as only one question arises upon the pleadings, we will not further set them forth. This one question relates to the overruling of respondent Czaszewicz's demurrer to relator's petition, which will be hereafter noticed and disposed of. The relator, the City of West Hammond, interposed an answer, but as it is not complaining of the judgment it is not necessary to here set forth such answer, as the issues upon this review lie between the relator and the respondent Czaszewicz.

The facts proven on the hearing are in brief that respondent, Jacob Czaszewicz, was city treasurer of West Hammond for 2 years ending April 30, 1915; that the relator owned a number of bonds and warrants of the City of West Hammond; that among the bonds so owned by relator were four bonds for $500 each and three for $100, all due prior to January 1, 1915; that respondent had two interviews with the bank officers between January 1, 1915, and April 30, 1915; that on January 15 respondent took up a number of warrants, paying relator $1,076.67 by check drawn

by him on the West Hammond Trust and Savings Bank, the bank designated by city ordinance as the depository for all city funds. The second interview was on March 30, when respondent took up more warrants, bonds, etc., to the amount of $2,987.50, which he paid by check on the West Hammond bank. None of the seven bonds in question was included in these papers. Within 2 months after respondent retired from the office of city treasurer, the bonds in dispute were found to be missing from relator's bank upon examination of its affairs by the bank examiner. The books of the bank showed no payment on these bonds, although on inquiry at the West Hammond municipal offices relator discovered that respondent had turned in the seven bonds to the city clerk as paid and had credited himself on his books as city treasurer, under date of April 29, 1915, with payment of $2,300 and interest to April 29, being the day on which respondent's term as treasurer ended. The bank's daily balance sheet failed to show that any money was received and unaccounted for either on March 30, the date of the last transaction with respondent, or on April 29, when respondent retired from office. Respondent's account at the West Hammond Trust and Savings Bank showed the two checks for $1,076.67 and $2,987.50, but no other payments over $300 to any one from March 25 to the end of his term; that his total checks from March 25 to the end of his term, excluding the one item of $1,076.67, were less than $1,000. On respondent's last visit to relator's bank all the West Hammond bonds and warrants were spread out on a table in the directors' room and the cashier of relator and the respondent looked them over. No one but these two persons was in the room and no one else came into the room while the papers were there. The cashier was called to the telephone and was out of the room a few minutes, respondent being in the room alone with the bonds during that time. Relator kept all of its bonds in the personal custody of the cashier, who kept them

locked in the vault, keeping the key himself. When respondent left, the cashier gathered up the papers from the table and locked them in the vault, no one but the cashier having access to them.

Respondent maintained at 319 State Line street, in the same place where his home was, a grocery, meat market, coal yard and saloon. He testified that he always had a large amount of money ready on hand; that he was always paying out cash to people who came for it. He could not remember when he paid for the seven bonds nor how he paid for them, although he said, "It must have been in checks and cash." Relator's cashier testified that respondent never paid cash, but always paid by check, and that he did not know of respondent's ever paying for bonds in cash.

Before the trial notice was served for respondent to bring into court his canceled checks. When called for upon the trial they were not produced. The cashier of respondent's bank testified that respondent's canceled checks were not kept by the bank but were returned to him.

Respondent Czaszewicz argues for reversal that as applied to the facts in this case mandamus will not lie; that he, respondent Czaszewicz, was *functus officio* when the petition was filed; that an ex-official cannot be forced to do an official act by mandamus after his term of office has expired; that the judgment is a nullity because the court was without power to proceed to determine questions of fact without submitting the same to a jury, on the contention that trial by jury was not waived; that the demurrer to the petition should have been sustained; and that relator cannot maintain mandamus on the facts of this case in the name of the People.

Before adverting to the law of the case we will dispose of the facts. All but one of the controlling facts are in the record unchallenged. The one crucial fact strongly contested is how Czaszewicz obtained possession of the four $500 and three $100 bonds in dispute.

Relator's evidence tends to sustain its theory that Czaszewicz obtained possession of the seven bonds irregularly; that on the last visit of Czaszewicz to relator's bank and during the absence of its cashier in answering the telephone, Czaszewicz possessed himself of the bonds; while Czaszewicz swears that he paid for the bonds when he obtained possession of them. If Czaszewicz was right in his contention that he paid for these seven bonds, he could readily have proven that fact—if it was a fact—by evidence aside from his own unsupported statement.

The two other bond transactions with the bank, one of $2,987.50 and the other of $1,076.67, were proven by the books of the bank where Czaszewicz kept his treasurer's account under the city ordinance, these having been paid by checks. Bearing in mind the facts that relator's books showed no payment for any one of these seven bonds, that respondent would not swear that he remembered paying for them, his halting testimony that he paid for the bonds with cash, the testimony to the effect that he always paid by check, that there was no proof of any corresponding credit in his treasurer's account with his bank of such payment, and respondent's uncertainty regarding the transaction as developed by the questions and answers hereinafter recited, his evidence must be held to be not only unreliable but unconvincing. The testimony referred to is as follows:

"Q. You don't remember within two months when you paid out the $2,000? A. Well, from that time when they were missing I kind of lose my memory.

"The Court: Did you pay them in cash or by check or how? A. I paid with checks and cash.

"Q. How did you pay these particular bonds? A. I paid it with money.

"Mr. Megan: All of it with cash? A. That I don't remember.

"Q. Do you know whether or not you paid any of it by check? A. That I don't remember."

The record shows that respondent, holding an important financial elective office, was so unfamiliar with the English language that he had to give his testimony through an interpreter. This seems to us a most unusual condition and one that did not tend to add credence to his apparent lapses of memory concerning events of importance.

From the evidence in this record the court might well conclude, as it did, that the believable evidence sustains relator's contention that the seven bonds in dispute were not paid for by Czaszewicz or by any one for him at any time. The evidence of Czaszewicz standing alone discredits his contention that he paid for these seven bonds.

Respondent's demurrer, which was overruled, was general. By pleading over he waived any error of the court in such ruling. *Walker v. Welch,* 14 Ill. 277; *Pittsburg, C., C. & St. L. Ry. Co. v. Robson,* 204 Ill. 254; *People v. American Life Ins. Co.,* 267 Ill. 504.

Respondent urges that the petition of relator was not verified, thereby making it obnoxious to the demurrer interposed.

There are two answers to this contention. In the first place, the lack of verification cannot be urged on demurrer; secondly, it is not necessary to verify a petition for mandamus. In *People ex rel. Robinson v. Knight,* 189 Ill. App. 449, it was held that the question of want of sufficient verification of a petition for mandamus cannot be raised by demurrer. Neither want of an affidavit or verification to a pleading nor the insufficiency of the verification is ground for demurrer. Such question should be raised by motion to strike the pleading from the files. Moreover, since the passage of the act of 1874 relating to mandamus, a verification of the petition is unnecessary.

Respondent contends that he had a right to trial by jury and that he did not waive such right. However, relator proceeded to trial before the court without objection until after the court had heard the cause and

announced its conclusions, whereat respondent's counsel suggested that he had a right to a jury trial. The objection to the court proceeding to try the case without a jury came too late after the trial had practically ended. Respondent waived his right to a trial by jury by proceeding to trial without asking for a jury. This case is analogous on principle to *Heacock v. Hosmer*, 109 Ill. 245, where the court said:

"If she was entitled to a jury trial, it was her duty to demand a jury, and had the court refused her that right, then she would have been in a position to complain; but she did not ask for a jury in the Circuit Court, or in any manner indicate to the court that she desired the matters involved in the case submitted to a jury. We are therefore of opinion, as no jury was demanded, the right of trial by jury was waived."

*Washington v. Louisville & N. Ry. Co.*, 136 Ill. 49, where the court said:

"She stood by and participated in the proceeding without objection. * * * A party cannot stand by and permit the court having jurisdiction to determine the question, to proceed to final judgment, and then be heard to complain for the first time in the Appellate Court."

It is also contended that "no public rights are involved in this case," and that therefore relator had no right to prosecute in the name of the People.

The nub of this case seems to us to be that Czaszewicz, the late treasurer of the City of West Hammond, retains in his possession money which of right belongs to and is the property of the city, therefore it is public money. The whole purpose of the proceeding is to compel respondent Czaszewicz, as the city's late treasurer, to pay into the treasury the money which he wrongfully withholds, so that the city may discharge its obligation by paying to the relator the amount due upon its seven bonds here in dispute. We think that *North v. Board of Trustees*, 137 Ill. 296, and *City of Ottawa v. People ex rel. Caton*, 48 Ill. 233, are author-

ities sustaining relator's right to proceed in the name of the People.

It is urged that "mandamus will not lie to compel the performance of an official act or duty after the expiration of the term of office of the respondent."

From the time of the early English cases mandamus has been resorted to successfully to compel an ex-official to perform an official duty omitted to be performed during his term of office. To such effect is *Rex v. Wildman*, 2 Str. 879, in which case a mandamus was granted to compel an ex-clerk, who had been removed from his office, to deliver to the company of blacksmiths all books and papers which he had in custody by virtue of his office.

In *Rex v. Mayor of Cambridge,* 4 Burr. 2011, mandamus was ordered commanding a new election to be held, the previous one being held void, the writ being directed "to the late mayor." Tapping on Mandamus, 470.

In *People ex rel. Brewster v. Kilduff*, 15 Ill. 493, mandamus was held to be a proper remedy against an ex-mayor to obtain possession of a seal, books and papers, the property of the corporation. The court said: "Of the right to the writ to deliver up the seal to the mayor and clerk of the corporation, we can have no doubt." *Loewenthal v. People ex rel. Raymond,* 192 Ill. 222.

*Huffman v. Mills*, 39 Kan. 577, is a case where a mandamus was awarded to compel a former sheriff to deliver property belonging to the sheriff's office to his successor. So in *Castle v. Lawlor*, 47 Conn. 340, a writ of mandamus was granted commanding a former tax collector to deliver up rate bills for uncollected taxes to his successor. In *Fasnacht v. German Literary Ass'n*, 99 Ind. 133, the writ was granted to compel an officer of the association whose term had expired to deliver up the papers of the association in his possession to his successor. In *Proprietors of St. Luke's Church v. Slack*, 7 Cush. (Mass.) 226, it was

held that mandamus would lie to compel the treasurer or clerk of a religious society whose term of office had expired to deliver the records and papers of the society to his successor in office. *State v. Davis,* 54 Mo. App. 447.

*City of Keokuk v. Merriam,* 44 Iowa 432, was a mandamus proceeding to compel a municipal officer to submit his books of account to the officer authorized to inspect them. Defendant pleaded that he had resigned his office. Such answer was held to be subject to demurrer, the court saying:

"We do not understand that it is claimed by appellant that mandamus will not be proper in such case if the defendant is still in office. But it is said that the defendant being no longer in office, he was not amenable to mandamus. Mandamus is the proper remedy to compel the performance of an official duty. At the expiration of a term of office, it is the official duty of the officer to surrender the books of his office. This duty, we think, so far as the remedy for its enforcement is concerned, does not become less an official duty because it is neglected until the office has expired."

We hold that mandamus will lie in this case to compel respondent to do the acts commanded in the writ which he should have done during his tenure of office. *State v. Cole,* 25 Neb. 342.

We are not able to agree with the contention that mandamus does not lie to enforce the payment of money. In *People v. Quinn,* 143 Ill. App. 123, the court said:

"If in wilful disregard of such duty, and without reasonable excuse, he should fail to pay over money actually in his hands in the ordinary and regular course of business, but retained the same for an unreasonable length of time, *mandamus* would undoubtedly lie."

It was the duty of respondent to have paid to his successor the $2,300 collected by him as treasurer to discharge the indebtedness of the seven bonds here in dispute and not to retain such money to his own use.

As he has not performed these acts voluntarily, as he should, mandamus is the appropriate remedy to compel him to do so.

There is no reversible error in the record before us, and the judgment of the Circuit Court is affirmed.

*Affirmed.*