STATE, *ex rel.* MRS. LOLA PITTMAN, a Married Woman, MRS. MIRIAM REID, a Married Woman, MRS. EVELYN NEWBERG, a Married Woman, and MRS. MAMIE LOU STEPHENS, a Married Woman, by Their Next Friend, E. R. HANSEN, v. GEORGE A. BARKER, SR., *et al.,* as Board of Public Instruction of Orange County.

152 So. 682.

Division A.

Opinion Filed February 5, 1934.

Petition for Rehearing Denied February 27, 1934.

*Tilden, Hansen & Anderson* and *George P. Garrett,* for Plaintiff in Error;

*Warlow, Carpenter & Fishback,* for Defendants in Error.

TERRELL, J.—On three separate dates, to-wit: June 30, August 23, and September 25, 1933, petitioners were nominated by the Trustees of Special Tax School District No. 6 of Orange County to teach in the public school at Ocoee, one of the schools in said special tax school district, and their names were duly certified to the board of public instruction for appointment, as the law directs.

Promptly following each nomination the board of public instruction declined to appoint and contract with petitioners for the positions to which they were nominated by the trustees, giving as its reason therefor that petitioners, Mrs. Pittman, Mrs. Reid and Mrs. Newberg were married ladies and that their husbands had been appointed to teach in the same school. As to petitioner, Mrs. Stephens, the board gave as its reason for not appointing her that she had an independent, adequate income and that others needed the position worse than she did.

Being thus refused appointment to the positions stated, petitioners instituted this proceeding in mandamus. Alternative writ was issued from the Circuit Court of Orange County directed to defendant, board of public instruction, commanding it to appoint petitioners to the positions to which they had been recommended or to show cause why they refused to do so. A motion to quash the alternative writ was granted and final judgment was entered for the defendants. This writ of error was prosecuted to that judgment.

The question we are called on to determine is whether or not in the appointment of teachers to the public schools located in special tax school districts the board of public instruction may capriciously refuse to appoint the nominees of the trustees or must such refusal be predicated on reasonable or valid grounds and if not so predicated may the appointment of the nominee of the trustees be enforced by mandamus.

Sections 10 and 17 of Article XII of the Constitution provide for the creation of special tax school districts and the election biennially of three trustees for each district. Section 568, Revised General Statutes of 1920, Section 709, Compiled General Laws of 1927, provides that the powers

of trustees shall not be those of control but of supervision only but shall extend to all the public schools within the special tax school district. Section 576, Revised General Statutes of 1920, Section 717, Compiled General Laws of 1927, makes of trustees of special tax school districts a body corporate, to hold property, sue and be sued, provide for buildings, repairs, libraries, and perform other corporate functions, except that they cannot create a debt without the approval of the board of public instruction. Special tax school district trustees are also authorized to prorate all the funds of the district. Section 570, Revised General Statutes of 1920, Section 711, Compiled General Laws of 1927.

The answer to the question with which we are confronted turns on the interpretation of Section 569, Revised General Statutes of 1920, Section 710, Compiled General Laws of 1927, which is as follows:

"All public schools conducted within a special tax school district shall be under the direction and control of the county board of public instruction and county superintendent, as in other districts, and subject to the same laws, rules, and regulations prescribed for the conduct of other schools, except that the trustees shall have power to nominate to the county board of public instruction teachers for all schools within such special district; provided that no person be nominated for a teacher who does not hold a teacher's certificate unimpaired by suspension, revocation, or limitation, or that will not remain in full force for the term of the school, and obtained in compliance with the laws of this State. The county board of public instruction shall have the right to reject any teacher nominated, and in case the second nomination of a teacher for any position be not ratified, the said board shall then proceed, on its own motion,

to fill vacancies in the teaching force in any school in the special tax school district."

Under the statute as thus quoted the board of public instruction is vested with power of "direction and control," but the trustees are vested with the power to "nominate to the county board of public instruction teachers for all schools within the district." The board of public instruction may reject the nominee of the trustees but our view is that such rejection must be reasonably exercised and must be grounded on some dereliction in statutory or other qualification.

To nominate means to name, designate, or propose for election or appointment and here the statute in terms requires that the teacher named have the legal prerequisites to teach. The nomination here referred to may be likened to a nomination in a primary for State or county office or to the nomination of an executive committee or council either of which is binding in the absence of a showing of disqualification or that the nomination was illegally secured.

Trustees are responsible for the supervision of the schools within their district, they are vested with other important duties pertaining to them as pointed out by the statutes herein listed and are prohibited from nominating a teacher who does not possess the statutory and other qualifications laid on her. In view of this state of the law we are impelled to the conclusion that the nomination of the trustees must mean something more than an empty gesture to be cast aside at the caprice of the board of public instruction.

The Legislature has seen fit to safeguard the school system and the appointment of teachers with rigid impositions. Exceptional requirements are imposed on candidates to teach before they are eligible to pursue their profession. In addition to moral, educational, and other qualifications, they

must demonstrate ability to teach, discipline, and guide the youth if they would continue in their positions. The policy of the law is to remove the school system and the employment of teachers from political considerations and place the teacher and the school squarely on the merit system. Appointment of teachers is in no sense a reward for political favors as is sometimes the case in appointments to civil offices. State, *ex rel.* Robinson v. Keefe, 111 Fla. 701, 149 So. 638.

By its action the board of public instruction in effect imposed celibacy and a social state akin to poverty or destitution as a prerequisite for a lady to teach, notwithstanding the fact that our public schools are in the main staffed by lady teachers and teaching is one of the great professions. The Legislature has imposed no such requirement and we are cited to no authority warranting the defendants in doing so. It is not charged that petitioners are legally or otherwise disqualified for the positions to which they were named by the trustees. In fact it is shown that they were in every respect qualified but their nominations were rejected because of a policy the board had adopted of employing no married lady or lady of other means of support during the period of depression.

The effect of such a policy is unreasonable and unheard of in any other business or profession. Prevailing policy is to admit women to all professions and businesses on equal terms with men, but this is the first instance brought to our attention in which an attempt was made to bar them on the ground of marriage. In other words, capable women are invited to qualify themselves to teach but if they choose to marry or through industry or good fortune they attain some degree of financial independence they are penalized and shut out of the profession they have spent years of time and

thousands of dollars to equip themselves for, and this likely at the period of their greatest usefulness and at a time when it would be difficult to qualify and adapt themselves to another profession.

From this it follows that the board of public instruction may reject the nominee of the trustees of a special tax school district but such rejection must be properly predicated, otherwise the nominee of the trustees should be approved; but failing in this, mandamus may be resorted to to enforce compliance.

The judgment below is accordingly reversed with directions to reinstate the cause for further proceedings consistent with this opinion.

Reversed.

DAVIS, C. J., and ELLIS, J., concur.

WHITFIELD, P. J., and BUFORD, J., concur in the opinion and judgment.