S. A. GRAVES, as Superintendent of Public Instruction for Hendry County, Florida, *et al.*, v. STATE, *ex rel.*, NETTIE HAMPTON.

184 So. 112,
Division B.
Opinion Filed October 12, 1938.
Rehearing Denied November 8, 1938.

· *Louis O. Gravely* and *W. D. Bell*, for Plaintiffs in Error;

· *E. M. Magaha* and *W. C. Hodges,* for Defendant in Error.

CHAPMAN, J.—This case is here on writ of error to a peremptory writ of mandamus dated September 18, 1937, entered by the Circuit Court of Hendry County, Florida, directing the members of the School Board of Hendry County, Florida, to reappoint Miss Nettie Hampton and contract with her to teach in the La Belle School for the years 1937-1938. From this final judgment a writ of error was taken and a reversal thereof sought in this Court. On April 3rd, 1937, and on June 5, 1937, the Trustees of Special Tax School District No. 5 of Hendry County recommended to the Board of Public Instruction of said County the name of Miss Nettie Hampton. The Board of Public Instruction refused to reappoint and contract with Miss Hampton because: (a) she was non-cooperative; (b) she showed marked partiality among her pupils. The Court below heard evidence on the issues as made and, after a full hearing of all the parties, entered the judgment appealed from in this case.

The law controlling the case at bar is well settled in Florida. See Revels v. State, *ex rel.* Howard, 130 Fla. 242, 177 So. 623; State, *ex rel.* Pitman v. Barker, 118 Fla. 380, 160 So. 362; State, *ex rel.* Pitman v. Barker, 113 Fla. 865, 152 So. 682; State, *ex rel.* Waldron v. Wilkinson, 117 Fla. 463, 158 So. 703.

The record shows that Miss Hampton is a graduate of Southern College and when the suit at bar was filed had had several years of experience as a teacher in the schools of Florida. She was employed as a teacher in the LaBelle school, with assignments to the second, third and fourth grades in the primary department. Her ability and efficiency as a teacher was established by a number of disinterested witnesses then residing in the La Belle community. She

was well prepared educationally, which, coupled with her experience in the school room, made her a competent teacher, not only in the LaBelle school, but in any school in the State of Florida. It was admitted that she was free from any moral or character delinquencies.

The objection to Miss Hampton's continued service as a teacher was voiced by Mr. Roy Messer, a member of the school board of Hendry County, and his statement about her is, viz.: "Q. Tell us what he (Roy Messer) said." A. He (Roy Messer) said he didn't intend to hire her (meaning Miss Hampton) because she was the sister of Drew Hampton. Q. At the time he ran for the job he now holds, who opposed him in that election? A. Mr. Drew Hampton." When Miss Hampton was on the stand the following ocurred: "Q. Mrs. Helms that has testified is your sister? A. Yes. Q. And you have a niece who teaches in the Clewiston school? A. Yes, sir, but Mrs. Helms had a hard time getting her place back. Q. She has been confirmed? A. It took a long time by getting down on her knees and begging to get it." Mrs. Helms likewise was a sister of Drew Hampton, the opponent in the primary of Mr. Roy Messer, who claimed that no politics existed in the selection of teachers and that Miss Hampton showed "partiality and was non-cooperative."

It was shown that Miss Hampton was in charge of chapel exercises and the witness led the singing. The witness led in singing Mandalay and wanted the boys to whistle the chorus while the girls sang—when Miss Hampton objected to that part of the chapel exercises. It was contended in this instance that she was non-cooperative. The witness' feeling toward her was bad because she wouldn't cooperate. The witness had taught as principal of the school but was not reappointed when Drew Hampton was on the school board. The principal of the school requested Miss Hamp-

ton and other teachers to play with the pupils but Miss Hampton declined so to do. She talked about a member of the faculty and called him "an old fool." The principal wanted Miss Hampton to dismiss her pupils at 2:15 and she insisted that her teaching program required them to stay until 2:30. Miss Hampton required higher marks for her pupils and had a higher number of honor pupils than the other teachers. Roy Messer, member of the school board, held up the appointment of Miss Hampton, not because her brother opposed him in the primary, but because he had received "ten thousand" complaints against her for non-cooperation. She was partial to her pupils because she wrote one of the patrons of the school: "It is immaterial to me whether your child attends school or not." Another statement of partiality is that one of her pupils used profanity and she washed his mouth with Octagon soap. There was a difference of opinion among the members of the faculty as to the proper way of making certain "capital letters," when some members disliked the exact type of capitals used and taught by Miss Hampton. Issues of fact in a mandamus proceedings are tried by the court and not by a jury. See State, *ex rel.* County Com'rs Columbia County v. County Comm'rs of Suwannee County, 21 Fla. 1.

We have carefully examined all the testimony appearing in the record and hold that there is ample evidence to sustain the conclusion of the trial court and, in fact, no other conclusion could be justified.

It is contended by counsel for plaintiffs in error that the Board of Public Instruction was within its rights in rejecting the nomination on good cause shown and partiality shown to her pupils and the lack of cooperation with the members of the faculty and others brought the case squarely within State, *ex rel.* Bonner, v. Engram, 124 Fla. 516, 168 So. 837. We cannot agree with learned counsel on this

conclusion. While the alternative writ directs "the reappointment and to contract with Miss Hampton," the evidence shows that she had formerly been engaged as a teacher in the same school and had been assigned to the primary department thereof for two or three terms, the commands of the writ in broad language required the school board to observe the recommendations of the trustees of the school district and to pay her for her work as formerly. There is no error in the record and the judgment appealed from is hereby affirmed. It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.